JAMES W. MARSHALL v. WILLIAM M. HAMMOCK and MARY HAMMOCK DISHER.

(Filed 25 April, 1928.)

### 1. Trusts—Resulting Trusts—Husband and Wife.

A trust is engrafted on the title of the husband in favor of the wife when he has acquired lands by deed taken to himself with money belonging to her separate estate.

### 2. Equity—Laches—In Suit to Declare Resulting Trust.

Where the plaintiff as heir at law of his mother seeks to engraft a trust in her favor on the title to lands taken by his step-father, and purchased with the money belonging to her, as against the children of his mother's second marriage, and it appears that the *locus in quo* had been divided between the children of both marriages by proceedings for partition as tenants in common, and the plaintiff had purchased for a valuable consideration a part of the lands so allotted to another of the tenants, and the lands were thereafter so held peaceably and adversely for more than ten years, C. S., 445, and for the same period of time after the trust had been disclaimed by the alleged trustee: *Held,* the plaintiff is estopped by his laches from claiming an undivided interest in the tract as the heir at law of his deceased mother.

### 3. Property—Title to Real Property Not Affected by Acquiescence—Doctrine Not Applicable in this Case—Statute of Limitations.

*Held:* under the facts of this case, the general statute of limitations, C. S., 445, being applicable to the plaintiff's right of action to declare a trust, the principle that acquiescence cannot confirm a title has no application.

APPEAL by plaintiff from *Shaw, J.,* at February Term, 1928, of FORSYTH. Affirmed.

The plaintiff was the only child of his mother and his father James W. Marshall, Sr. After his father's death his mother married George W. Hammock, and of this union two children were born, namely, the defendant Mary Hammock Disher and John Hammock, deceased, who left the defendant William M. Hammock, as his only child and heir at law.

The plaintiff's evidence tended to show that Martha Jane Marshall Hammock, mother of the plaintiff, at one time owned in fee a tract of land containing about 42 acres, which she had acquired by the partition of the real property of her father, Archibald Fulp; that on 27 July, 1869, she and her husband, George W. Hammock, conveyed this land to Joseph Fulp in consideration of $400, which was paid to her husband; that this money was used in the purchase from J. P. Whicker of another tract containing 38 acres, the subject of this controversy, the title to which was taken in the name of George W. Hammock.

Martha Jane Marshall Hammock died in 1906. George W. Hammock, her husband, died on 14 March, 1926, leaving a will by which he gave to the plaintiff the sum of $50 and to the defendants all his other property, real and personal. In 1912 he executed a deed to the plaintiff for a part of the 38-acre tract described in the deed from J. P. Whicker and wife, dated 2 November, 1869. On 4 May, 1927, the plaintiff brought suit for partition and afterwards by amendment to his complaint sought to have the legal title to the land impressed with a trust for the benefit of the plaintiff as the heir at law of his mother.

At the close of the evidence the action was dismissed as in case of nonsuit by the Forsyth County Court; the plaintiff excepted and appealed to the Superior Court and the motion was again allowed. Exception and appeal by the plaintiff on error assigned.

*Richmond Rucker and John J. Ingle for plaintiff.*
*W. L. Morris and Manly, Hendren & Womble for defendants.*

ADAMS, J. On 2 November, 1869, J. P. Whicker and his wife conveyed the land in controversy to George W. Hammock, the second husband of the plaintiff's mother, and acknowledged payment of the purchase price by the grantee therein named. The deed was registered 13 January, 1870. The plaintiff alleged that the land had been paid for with his mother's money and that George W. Hammock held the legal title in trust for her during her life and thereafter until his death for her heirs at law. The case was tried upon this theory, the plaintiff contending that after the death of his mother, George W. Hammock was in

possession of the land as tenant by the curtesy; that upon the death of Hammock the defendants took exclusive possession; and that he is the owner of a one-third undivided interest in the land and is entitled to partition. The defendants contest the plaintiff's right to the relief sought on two grounds: (1) The complaint, having no allegation which negatives laches, is subject to demurrer *ore tenus;* (2) the cause of action is barred by laches and by section 445 of Consolidated Statutes.

The plaintiff offered evidence which, standing alone, is sufficient to call for an application of the equitable principle that if land is purchased with funds arising from the separate estate of the wife or with funds which by agreement of the husband are to be treated as such separate estate and title is taken in the name of the husband, the transaction raises a resulting trust in favor of the wife; and, nothing else appearing, the intervention of the jury would be necessary. *Tyndall v. Tyndall,* 186 N. C., 272; *Harris v. Harris,* 178 N. C., 7. But a verdict is not essential if the complaint is fatally defective, or if upon the admitted or undisputed evidence the action is barred either by the statute of limitations or by operation of the equitable doctrine of laches.

Equity aids the vigilant, not those who sleep on their rights. This is one of the several maxims of equity which form a component part of its jurisprudence. It is designed to promote diligence and to punish remissness or unreasonable delay in asserting a claim or moving for the enforcement of a right. Differently expressed, it embraces the defense of laches, which is often pleaded and enforced in bar of suits which are prosecuted in courts of equity. Its function is to safeguard peace and security; it therefore does not encourage stale claims or antiquated demands. The reason is obvious. The redress of a wrong or the enforcement of a right should not be delayed until the facts are involved in doubt and uncertainty. It was *Chief Justice Ruffin* who remarked (in a dissenting opinion in *Hill v. Jones,* 17 N. C., 104) that reasonable diligence is the best evidence of good faith and a just cause, and that we are obliged to distrust him who prefers his claim at a great interval after its origin. *Capehart v. Mhoon,* 58 N. C., 178; *Pender v. Pittman,* 84 N. C., 372; *Spencer v. R. R.,* 137 N. C., 107, 127; *Butler v. Bell,* 181 N. C., 85, 90.

A court of equity will usually have regard to a statute of limitations (*Taylor v. McMurray,* 58 N. C., 357), but the lapse of time may constitute a defense in equity even when no statute is controlling. *McAden v. Palmer,* 140 N. C., 258; Bispham's Prin. Eq., sec. 59. If a case does not fall within the operation of the statute of limitations no definite period is fixed within which a right must be asserted or else be barred by laches; and in the absence of a positive rule the question is addressed

to the sound discretion of the chancellor and must be determined according to the circumstances developed in each case. 21 C. J., 212 *et seq.*

Let us grant the plaintiff's contention that his mother's money was given for the land in suit; that her husband held the legal title for her benefit as the trustee of a resulting trust; that as husband and wife they lived on the land until her death in 1906; that, as held in *Spence v. Pottery Co.,* 185 N. C., 218, the husband's possession was that of the wife also; and that time did not begin to run during the life of the plaintiff's mother. With these admissions two principles are to be considered. (1) A person may preclude himself from asserting a right by abandoning it, or by acquiescence in its enjoyment by another under circumstances which are inconsistent with his own claim or demand. *Stith v. McKee,* 87 N. C., 389; *Mask v. Tiller,* 89 N. C., 423. (2) As a rule lapse of time is not a bar as between trustee and *cestui que trust,* but if the former, with knowledge of the latter disclaims the trust either expressly or by acts which necessarily imply a disclaimer, and unbroken possession follows in the trustee or in those claiming under him, for a period equal to that prescribed in the act of limitation to constitute a bar, the lapse of time under such circumstances may be relied upon as a defense. *Coxe v. Carson,* 169 N. C., 132. In the present case there is evidence to which each of these principles may be applied. Even if the plaintiff regarded Hammock's occupation of the land as that of a tenant by the curtesy, this circumstance did not prevent him from invoking, at any time after his mother's death, the equitable jurisdiction of the court to have Hammock declared a trustee. *Sprinkle v. Holton,* 146 N. C., 258, 265. Since early childhood he had known of his mother's claim; at her death, when his cause of action arose, he was advanced in years; but he declined to bring suit to enforce his right during Hammock's life. After Hammock's death, which occurred when twenty years had passed, he instituted the present action. Meantime, on 25 April, 1912, Hammock had executed and delivered to him and he had accepted a deed with the usual covenants of warranty conveying a small part of the 38-acre tract for which he had paid a valuable consideration. The distinguishing features of this transaction were Hammock's repudiation of the trust and the plaintiff's acquiescence in the adverse claim of title. This position is not modified by saying that Hammock conveyed the interest of a tenant by the curtesy. Evidently the plaintiff expected Hammock to leave a will devising him a part of the property. He testified that he would have been satisfied with eight acres on the back side of the tract: "that was the land I expected to get under George W. Hammock's will." His conception of his relation to the trustee is thus indicated. His title was to be derived, not from his mother by descent, but from Hammock by devise; so the result was not

affected by any declarations Hammock may have made after the execution of his deed to the plaintiff. The doctrine that acquiescence cannot confirm a title has no application to statutes of limitation or to kindred statutory provisions in regard to the abandonment or release of rights legal or equitable. *Davis v. Cotton,* 55 N. C., 430..

Six years after the plaintiff's cause of action had accrued he accepted Hammock's deed for a part of the disputed land; he delayed his suit for a declaration of the trust almost fourteen years thereafter; then after Hammock's death he sought to set up the fiduciary relation. Under the conditions disclosed by the evidence, his claim is without merit. Whether he was not informed as to the legal effect of delay is not material. We have held that an action to have a party declared a trustee is barred by the lapse of ten years. *Hospital v. Nicholson,* 190 N. C., 119; *Sexton v. Farrington,* 185 N. C., 339. And that the plaintiff cannot profit by a misconception of his rights is equally clear: as the Court said in *Williams v. Harrell,* 43 N. C., 123, "there is no saving clause for those who are ignorant, uninformed, in humble circumstances, and who neglect to consult counsel."

Under the former practice an objection that the plaintiff's equity was barred could be taken by demurrer; under the present practice it may be taken by a motion to dismiss the action. *Williams v. Harrell, supra; Worth v. Gray,* 59 N. C., 4.

Our view of the case dispenses with the necessity of deciding whether the complaint is defective because it contains no averment purporting to negative the plaintiff's laches in asserting his alleged equity. On this question the following authorities may be consulted: 4 Pomeroy's Eq. Jurisprudence, sec. 1457; *Badger v. Badger,* 2 Wallace, 87, 17 L. Ed., 836; *Hays v. Seattle,* 251 U. S., 233, 64 L. Ed., 243; *Coxe v. Carson, supra.* The judgment is

Affirmed.