CITIZENS BANK OF MARSHALL v. LESLIE GAHAGAN ET AL.

(Filed 4 May, 1938.)

**1. Deeds § 5—**

The redelivery of an unregistered deed to the grantor does not *ipsa facto* reinvest title in the grantor, and an instruction that it does so is erroneous, certainly where it does not appear that the grantees surrendered possession upon its redelivery or that it was a deed of gift.

**2. Assignments § 6—Evidence held not to show as matter of law that assignor was owner of funds paid to third person by acceptor.**

This action was instituted by an assignee of an heir against the executors under the will to recover for moneys alleged to belong to the heir and to have been wrongfully paid to others by the executors after notice

and acceptance of the assignment. It appeared that the funds were derived from collections made after the death of testator on a purchase money note for standing timber conveyed by testator by timber deed after the execution of the will. Plaintiff assignee failed to establish as a matter of law that the persons to whom the executors made payment did not have an interest in standing timber on part of the lands owned by testator, either under his will or a timber deed executed by him, or that the funds collected on the purchase money note were not derived from timber cut from the tracts of land in which they had such interest. *Held:* An instruction that the payment of the funds to the third persons by the executors after they had accepted the heir's assignment constituted a wrongful diversion of the funds as a matter of law is error entitling the executors to a new trial.

SEAWELL, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Johnston, J.,* at October Term, 1937, of MADISON.

Civil action to recover balance due on promissory note executed by Leslie Gahagan to plaintiff, secured by assignment of maker's interest in logging or timber contract, and to hold executors responsible for wrongful conversion or diversion of moneys covered by the assignment.

On 7 May, 1921, Wade Gahagan, father of Leslie Gahagan, published his last will and testament in which he reserved certain timber rights to his "common estate" with directions that his executors sell the timber rights, so reserved, to the best advantage and divide the proceeds, one-fourth to Leslie Gahagan, etc.

The next clause contains the following provision: "I hereby give and bequeath in trust to W. C. Cook, McKinley Cook and Winston Cook, trustees for the benefit of Thomas Cook, Belva Cook Ramsey and Edison Cook, and themselves, as more fully appears in a deed dated 7 May, 1921, all my right, title, claim and interest in and to the properties known as the Walnut Knob and the timber rights on the Gahagan Mill property, belonging to the estate of B. F. Gahagan, deceased. It is furthermore my will and desire that R. M. Gahagan and Lillie Gahagan assist in the just arrangement of the above matter as more fully appears in the above named deed."

On 3 August, 1922, Wade Gahagan joined with others in a timber deed to Luther O. Griffith, conveying all of his standing timber, together with other standing timber owned jointly by himself and the other parties to the deed.

The unpaid purchase price, amounting to $110,000, was secured by deed of trust executed by Luther O. Griffith to A. W. Whitehurst, trustee, who is also cashier of plaintiff bank. The note was made payable at the Citizens Bank of Marshall.

Wade Gahagan died in February, 1923. His will was probated on 5 March, 1923.

By consent of the parties concerned, and agreeably to the provisions of the deed of trust and the will as interpreted by the executors, payments were made by Griffith as the cutting progressed and the moneys deposited in the plaintiff bank to credit of distributees and owners as their interests appeared according to stumpage cut from each tract of land.

Under this procedure, approximately $10,726 was deposited to the credit of McKinley Cook, trustee for the Cook heirs, between 1 July, 1923, and June, 1924, out of moneys collected on the Griffith note.

The trial court instructed the jury that the payment by the executors "to the Cook heirs, after this assignment was made by Leslie Gahagan, was a wrongful disposition of that money . . . that fund, whatever it was should be credited to the Wade Gahagan estate, and if Leslie Gahagan was entitled to one-fourth of it, then by virtue of that assignment, the bank would be entitled to one-fourth of that." Exception.

The court further instructed the jury that the Cook heirs had no interest in the Griffith money, or the Wade Gahagan estate, because the deed of 1 May, 1921, was never put upon record; that it was afterwards returned to Wade Gahagan, who then again became the owner of the property. Exception.

The jury returned the following verdict:

"1. What amount, if any, is due and unpaid to the plaintiff Citizens Bank on the note executed by Leslie Gahagan, dated 23 May, 1924, and described in paragraph 3 of the complaint? A. '$2,424.40.'

"2. Did Leslie Gahagan execute and deliver, for a valuable consideration, to the plaintiff Citizens Bank, an assignment, dated 23 May, 1924, as alleged in paragraph 4 of the complaint? A. 'Yes.'

"3. Did the defendants, executors of Wade Gahagan, have notice of said assignment? A. 'Yes.'

"4. Did the defendants executors recognize, accept, adopt and ratify said assignment? A. 'Yes.'

"5. Did the defendants executors, after notice of said assignment, pay out funds or money of Leslie Gahagan and due to the plaintiff Citizens Bank upon said assignment, to parties other than plaintiff Citizens Bank? A. 'Yes.'

"6. If so, in what amount? A. '$2,424.40.'

"7. What amount, if any, is the plaintiff Citizens Bank entitled to recover of the defendants executors of the estate of Wade W. Gahagan, deceased. A. '$2,424.40.'

"8. What amount, if any, is the plaintiff Citizens Bank entitled to recover of the defendants executors, individually, because of their wrongful conversion or diversion of moneys going to Leslie Gahagan, under the contract of Luther Griffith and assigned by Leslie Gahagan to the Citizens Bank, as alleged in the complaint? A. '$2,424.40.' "

17—213

Judgment on the verdict, from which the defendants appeal, assigning errors.

*J. Coleman Ramsey and John H. McElroy for plaintiff, appellee.*

*J. E. Rector, Calvin R. Edney, and Weaver & Miller for defendants, appellants.*

STACY, C. J. It is conceded in plaintiff's brief that the settlement of Wade Gahagan's estate would have been subject to no criticism or objection from the plaintiff, but for the assignment by Leslie Gahagan of his interest in the Luther O. Griffith contract. This assignment bears date 23 May, 1924. Payments to the Cook heirs were made prior thereto and shortly thereafter, up to June, 1924, but just how much was paid to them after the execution of the assignment is not readily discernible from the record. Moreover, plaintiff's cashier, who was trustee in the Griffith deed of trust and who handled the matter for the bank, testified that the $10,726 credited or disbursed to the Cook heirs "was deducted from the timber cut from the Cook land." The theory upon which the settlement of the estate proceeded was, that the Cook heirs were entitled to a portion of the funds derived from the Griffith contract, either by reason of the deed of 7 May, 1921 (which does not appear in the record), or by virtue of the will which makes reference to the provisions of this deed.

The trial court took the view, however, that such procedure was not permissible, since the deed was returned to Wade Gahagan without registration. The conclusion is a *non sequitur*. The return of the deed did not *ipso facto* reinvest title in the grantor. *Robbins v. Rascoe,* 120 N. C., 79, 26 S. E., 807; *Lynch v. Johnson,* 171 N. C., 611, 89 S. E., 61. The contrary instruction was erroneous. 8 R. C. L., 987. And, besides, it does not appear that the Cook heirs surrendered possession with the return of the deed; nor is it conceded that the deed was one of gift. *Allen v. Allen,* 209 N. C., 744, 184 S. E., 485.

The plaintiff interposed no objection to the settlement of the estate, albeit it had full knowledge of how the matter was being handled, particularly as its cashier was trustee in the deed of trust and made the disbursements. It is a rule of general acceptance that one who stands by and sees another dealing with property in a manner inconsistent with his own rights, and makes no objection, will be regarded as having abandoned any claim or demand at variance with his silence or acquiescence. *McNeely v. Walters,* 211 N. C., 112, 189 S. E., 114; *Marshall v. Hammock,* 195 N. C., 498, 142 S. E., 776; *Stith v. McKee,* 87 N. C., 389; *Mask v. Tiller,* 89 N. C., 423; *Mason v. Williams,* 66 N. C., 564; *Saunderson v. Ballance,* 55 N. C., 322; *Lentz v. Chambers,* 27 N. C., 587; *Bird v. Benton,* 13 N. C., 179; *Despard v. Despard,* 53 W. Va., 443. Compare *Burnett v. Supply Co.,* 180 N. C., 117, 104 S. E., 137.

However, as this is not an administration suit, *Rigsbee v. Brogden,* 209 N. C., 510, 184 S. E., 24, or one to surcharge and falsify the account of the executors, *Thigpen v. Trust Co.,* 203 N. C., 291, 165 S. E., 720, and estoppel has not been pleaded, we refrain from pursuing the matter further, as a new trial must be awarded on other grounds, *i.e.,* erroneous instructions. It does not follow as a matter of law that payment to the Cook heirs was a wrongful diversion of moneys arising from the timber contract, of which plaintiff can complain. There was error in the court's peremptory instruction to this effect.

The defendants are entitled to another hearing. It is so ordered.

New trial.

SEAWELL, J., took no part in the consideration or decision of this case.